2003 ND 175

**Melissa Ann HANSON, Plaintiff and Appellant,**

v.

**DIRECTOR, NORTH DAKOTA DE-PARTMENT OF TRANSPORTA-TION, Defendant and Appellee.**

No. 20030136.

Supreme Court of North Dakota.

Nov. 17, 2003.

Michael R. Hoffman, Bismarck, ND, for plaintiff and appellant.

Andrew Moraghan, Assistant Attorney General, Office of the Attorney General, Bismarck, ND, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Melissa Hanson is appealing a South Central Judicial District Court judgment affirming an administrative suspension of her driving privileges for driving under the influence of alcohol. Hanson argues that reasonable, articulable suspicion did not exist for an investigative stop of her vehicle. Because the evidence supports the hearing officer's conclusion that the arresting officer had reasonable and articulable suspicion to stop Hanson's vehicle, we affirm.

I

[¶ 2] On December 29, 2002, at approximately 12:00 a.m., Officer Norman Ruud stopped Hanson while she was driving on I–94. After Hanson failed the horizontal gaze nystagmus test, the ABC test, and the Breathalyzer test, Ruud arrested her for driving under the influence of alcohol.

Hanson agreed to submit to a blood test, which indicated her blood alcohol concentration had been .12 percent by weight within two hours after Ruud stopped her vehicle. Hanson was notified of the Department of Transportation's intent to suspend her driving privileges.

[¶ 3] An administrative hearing was held on February 4, 2003. The officer testified that he was traveling eastbound on I–94 and observed Hanson's vehicle weaving on the roadway. Ruud estimated the vehicle was about a quarter of a mile ahead. He testified that he then increased his speed to observe Hanson more closely and saw the vehicle cross over the broken white dividing line. He activated his video camera in the patrol car and observed the vehicle cross over the line a second time before it pulled onto the off-ramp at exit 159. Ruud activated his lights as Hanson was exiting the interstate. Ruud approached the vehicle and smelled the odor of alcohol coming from inside.

[¶ 4] The hearing officer concluded that although slight weaving would not have been enough to have stopped Hanson's vehicle, the evidence showed the weaving was more than slight and therefore Ruud had a sufficient basis for stopping it. She concluded Hanson's vehicle was weaving not only within its lane, but also onto the dividing line. The hearing officer also concluded Ruud had reasonable grounds to believe Hanson had been driving under the influence of alcohol in violation of N.D.C.C. § 39–08–01. The hearing officer suspended Hanson's driving privileges for one year.

[¶ 5] Hanson appealed the administrative decision to the district court. The district court issued its memorandum opinion and order on April 16, 2003, affirming the administrative decision. The judgment was entered on April 28, 2003.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

## II

[¶ 7] "We review an administrative suspension of a driver's license under N.D.C.C. ch. 28–32, the Administrative Agencies Practice Act." *Isaak v. Sprynczynatyk*, 2002 ND 64, ¶ 10, 642 N.W.2d 860. "This Court exercises a limited review in appeals involving drivers' license suspensions or revocations." *Henderson v. Director, N.D. Dep't of Transp.*, 2002 ND 44, ¶ 6, 640 N.W.2d 714. On appeal, we review the administrative agency's decision. *Rist v. N.D. Dep't of Transp.*, 2003 ND 113, ¶ 6, 665 N.W.2d 45. We give deference to the administrative agency's findings and will not make independent findings or substitute our judgment for that of the agency. *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 7, 663 N.W.2d 161. We instead determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. *Id.* Our review also " 'defers to the hearing officer's opportunity to hear the witnesses' testimony and to judge their credibility.' " *Henderson*, 2002 ND 44, ¶ 6, 640 N.W.2d 714 (quoting *Houn v. N.D. Dep't of Transp.*, 2000 ND 131, ¶ 6, 613 N.W.2d 29). The conclusion of whether the facts support a reasonable and articulable suspicion, however, is a question of law, fully reviewable on appeal. *Salter v. N.D. Dep't of Transp.*, 505 N.W.2d 111, 112 (N.D.1993). "Although our review is limited to the record before the administrative agency, 'the district court's analysis is entitled to respect if its reasoning is sound.' " *Id.* (quoting *Obrigewitch v. Director, N.D.*

*Dep't of Transp.*, 2002 ND 177, ¶ 7, 653 N.W.2d 73). We affirm the agency's decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

## III

[¶ 8] Hanson argues Ruud did not have reasonable, articulable suspicion for an investigative stop of her vehicle.

### A

[¶ 9] Hanson argues the hearing officer's finding that Ruud observed her vehicle weaving within its lane was not supported by a preponderance of the evidence, because the officer did not testify that he observed weaving within the lane but rather that the vehicle appeared to be weaving. Hanson also argues the hearing officer's

finding that the weaving was more than slight, because her vehicle was weaving not only within its lane but also onto the lane-dividing line, was not sustained by the findings of fact for the same reason. Hanson argues that Ruud's vehicle was a substantial distance behind hers when he noticed her vehicle weaving and that Ruud needed to catch up to her vehicle.

[¶ 10] Although Ruud did not testify that the weaving he observed was limited to weaving within the lane, he did testify that Hanson's vehicle appeared to be weaving on the roadway. Although Ruud testified that he sped up to get closer, he was only a quarter of a mile away and observed weaving twice after getting closer to Hanson's vehicle. This testimony supports the evidence that Hanson was weaving, and was weaving onto the dividing line, and there was no evidence presented to refute this. Whether the weaving was initially within the lane is of little consequence to the outcome. We affirm, concluding the evidence supports the hearing officer's finding that Hanson's vehicle was weaving and that the weaving was more than slight because her vehicle also was weaving onto the lane-dividing line.

B

[¶ 11] Hanson further argues that under the circumstances, weaving twice onto the lane-dividing line does not constitute more than just slight weaving. She claims that because there was no evidence of erratic movement or sharp veering, the weaving was slight or minimal and thus was insufficient to stop her vehicle. Hanson cites *Salter v. N.D. Dep't of Transp.* for this proposition. 505 N.W.2d 111, 113 (N.D.1993).

[¶ 12] In *Salter*, this Court held that slight weaving would not serve as a valid basis for a vehicle stop. *Id.* In *Salter*, however, the officer continually character-ized the movement of the vehicle as having been slight and minimum, and the officer did not consider the movement significant enough to include in his report. *Id.* Hanson's situation is different in that Ruud did not classify the weaving as slight or minimum and did include the weaving in his report. We are not persuaded by this argument and conclude that the finding of fact on this issue supports the hearing officer's conclusion.

C

[¶ 13] Hanson also argues that there were no traffic violations or other driving facts raising the level of this case to a reasonable and articulable suspicion of driving under the influence and that the hearing officer did not conclude she was engaged in criminal activity.

[¶ 14] "To stop a moving vehicle for investigative purposes, an officer must have a reasonable and articulable suspicion that a law has been or is being violated." *State v. Corum*, 2003 ND 89, ¶ 10, 663 N.W.2d 151. Reasonable suspicion requires more than a "mere hunch." *Id.* In determining whether an investigative stop is valid, an objective standard is used. *Id.* (citing *City of Devils Lake v. Lawrence*, 2002 ND 31, ¶ 8, 639 N.W.2d 466). This standard considers the inferences and deductions that an investigating officer would make. *State v. Fields*, 2003 ND 81, ¶ 13, 662 N.W.2d 242. We also consider the totality of the circumstances when deciding whether reasonable suspicion exists. *Id.* "'The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity.'" *Id.* (quoting *State v. Kenner*, 1997 ND 1, ¶ 8, 559 N.W.2d 538 (citation omitted)).

[¶ 15] "It is well settled, traffic violations, even if considered common or minor, constitute prohibited conduct which provide officers with requisite suspicion for conducting investigatory stops." *Zimmerman v. N.D. Dep't of Transp. Director*, 543 N.W.2d 479, 482 (N.D.1996). The reasonable suspicion standard, however, "does not require an officer to see a motorist violating a traffic law or to rule out every potential innocent excuse for the behavior in question before stopping a vehicle for investigation." *Kappel v. Director, Dep't of Transp.*, 1999 ND 213, ¶ 10, 602 N.W.2d 718. There can be circumstances in which lawful conduct might justify the suspicion that criminal activity is afoot. *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citation omitted)). Law enforcement officers are permitted to formulate certain common-sense conclusions about human behavior. *Id.* (citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). In a prior decision, this Court held that a vehicle's weaving within its own lane may be enough to justify the stop of that vehicle. *State v. Dorendorf*, 359 N.W.2d 115, 117 (N.D. 1984).

[¶ 16] Ruud observed Hanson's vehicle weaving on the roadway and observed her cross onto the dividing line twice. Even if these circumstances do not amount to any traffic violations, Ruud made a common-sense conclusion that Hanson was impaired, sufficiently justifying his suspicion that criminal activity was afoot.

[¶ 17] Considering the totality of the circumstances and considering the deductions and inferences a trained officer would make, we conclude that Ruud had the reasonable and articulable suspicion necessary to stop Hanson's vehicle.

## IV

[¶ 18] We affirm the district court judgment suspending Hanson's license.

[¶ 19] GERALD W. VANDE WALLE, C.J., EVERETT NELS OLSON, S.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

[¶ 20] The Honorable EVERETT NELS OLSON, Surrogate Judge, sitting in place of NEUMANN, J., disqualified.