2004 ND 59

**Aaron James JOHNSON, Petitioner and Appellee,**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

No. 20030339.

Supreme Court of North Dakota.

March 23, 2004.

Justin D. Roness (appeared), Thomas A. Dickson (on brief), and Timothy Q. Purdon (on brief), Dickson & Purdon, Bismarck, N.D., for·petitioner and appellee.

Reid A. Brady, Assistant Attorney General (on brief), and Douglas B. Anderson, Assistant Attorney General (argued), Office of the Attorney General, Bismarck, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1]   The North Dakota Department of Transportation appeals from a Southeast Judicial District Court judgment reversing an administrative hearing officer's decision to suspend Aaron Johnson's driving privileges for driving under the influence of alcohol.   The Department argues the administrative hearing officer reasonably found the provision for a twenty-minute waiting period in the approved method for conducting the Intoxilyzer test was followed.   The approved method requires the operator to ascertain the subject has had nothing to eat, drink, or smoke within the twenty minutes preceding the collection of the breath sample.   We reverse the district court's decision, concluding the hearing officer reasonably found the provision for a twenty-minute waiting period in the approved method for conducting the Intoxilyzer test was followed.

I

[¶ 2]   On May 7, 2003, Jamestown Police Officer Ronald Dietz stopped Johnson for a traffic violation.   After Johnson failed field sobriety tests and the S–D2 test, he was arrested for driving under the influence of alcohol.   After arresting Johnson, the officer transported him to the Stutsman County Corrections Center, where he administered an Intoxilyzer test. The test results showed Johnson had a blood alcohol level of .16 percent.   The Department notified Johnson of its intent to suspend his driving privileges, and he requested a hearing.

[¶ 3]   At the June 2, 2003, administrative hearing, the officer testified that he was familiar with the approved method for administering the S–D2 test and that he followed the approved method. He testified that before administering the test, he advised Johnson of the North Dakota implied-consent law.   He testified he checked Johnson's mouth and established a five-minute waiting period.   The officer explained that after the S–D2 test, he arrested Johnson, handcuffed his hands behind his back, placed him in the back of the police car, and transported him to the corrections center.   The officer testified that Johnson's arrest was at 1:32 a.m. and that it took about one or two minutes to get to the corrections center.

[¶ 4] The officer testified that once they arrived at the corrections center, he notified Johnson of the implied-consent law, checked the inside of his mouth to make sure there was nothing in there, and observed him for twenty minutes before administering the Intoxilyzer test. He testified the first breath sample was taken at 1:51 a.m. The officer testified he followed the approved method in administering the Intoxilyzer test. He explained he ascertained the twenty-minute waiting period by noting the time at which he read Johnson the implied-consent law. He stated he administered the test twenty minutes from that time. The Intoxilyzer test record and checklist also indicate that the twenty-minute waiting period was ascertained before the officer administered the test.

[¶ 5] At the hearing, Johnson objected to the admission of the Intoxilyzer test results, contending the officer did not comply with the twenty-minute waiting period provided for in the method approved by the State Toxicologist for conducting an Intoxilyzer test. The hearing officer found the twenty-minute waiting period had been observed by the time the officer administered the Intoxilyzer test. He suspended Johnson's driving privileges for ninety-one days.

[¶ 6] Johnson appealed the hearing officer's decision to the district court. The district court reversed the hearing officer's decision, concluding there was not a twenty-minute wait prior to the administration of the Intoxilyzer test. In its memorandum opinion, the district court explained the waiting period for the Intoxilyzer test does not begin until after the S–D2 test has been administered. The court explained that because each test has its own approved method with different waiting periods and different purposes, the waiting period from the S–D2 test cannot be tacked on to the waiting period for the Intoxilyzer test. The Department appealed the district court's decision.

[¶ 7] Johnson timely requested a hearing under N.D.C.C. § 39–20–05. The hearing officer had jurisdiction under N.D.C.C. § 39–20–05. The notice of appeal from the administrative agency decision to the district court was properly filed within seven days under N.D.C.C. § 39–20–06. The district court had jurisdiction under N.D.C.C. § 39–20–06. The Department filed a timely notice of appeal from the district court judgment under N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–32–49.

## II

[¶ 8] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs review of an administrative suspension of a driver's license. *Hanson v. Director, N.D. Department of Transportation*, 2003 ND 175, ¶ 7, 671 N.W.2d 780. "This Court exercises a limited review in appeals involving drivers' license suspensions or revocations." *Henderson v. Director, N.D. Department of Transportation*, 2002 ND 44, ¶ 6, 640 N.W.2d 714. On appeal, we review the administrative agency's decision and give deference to the administrative agency's findings, deferring to the hearing officer's opportunity to judge the credibility of witnesses. *Hanson*, at ¶ 7. We will not make independent findings or substitute our judgment for that of the agency. *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 7, 663 N.W.2d 161. We instead determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. *Id.; Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979). If the district court's analy-

sis is sound, however, it is entitled to respect. *Hanson,* at ¶ 7.

[¶ 9] We affirm the agency's decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

### III

[¶ 10] The Department argues the hearing officer reasonably found the twenty-minute waiting period of the approved method for administering an Intoxilyzer test had been followed.

[¶ 11] The admissibility of an Intoxilyzer test result is governed by N.D.C.C. § 39–20–07(5). *Buchholz v. N.D. Department of Transportation,* 2002 ND 23, ¶ 7, 639 N.W.2d 490. This statute provides:

The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the person requested to take the chemical test.

N.D.C.C. § 39–20–07(5).

[¶ 12] Whether an Intoxilyzer test has been properly administered can be determined by proving that the method approved by the State Toxicologist has been scrupulously followed. *Buchholz v. N.D. Department of Transportation,* 2002 ND 23, ¶ 7, 639 N.W.2d 490. Scrupulous compliance does not mean hypertechnical compliance. *Id.*

[¶ 13] The portion of the State Toxicologist's approved method at issue in this case provides: "Before proceeding, the operator must ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample." *Approved Method to Conduct Breath Test with Intoxilyzer 5000 KB–EP,* dated January 25, 2002.

[¶ 14] The Department argues that the twenty minutes does not have to be calculated from the time of arrest and that it can use the time from the S–D2 testing. Although the district court found the waiting period from the S–D2 test cannot be tacked on to the waiting period for the Intoxilyzer test, Johnson concedes the waiting period from the S–D2 test can

be used. We conclude the district court misapplied the law when it found the waiting period for the S–D2 test cannot be used for the Intoxilyzer test.

[¶ 15] Johnson nonetheless argues that the officer's testimony reveals he failed to comply with the testing procedure. He argues the officer testified that he attempted to ascertain the twenty-minute waiting period after arriving at the corrections center, that he checked Johnson's mouth sometime after they arrived, and that he then began the waiting period. Johnson argues the evidence shows he was arrested at 1:32 a.m., they arrived at the corrections center at 1:35 a.m., and the first breath sample was obtained at 1:51 a.m. He argues that because there was a maximum of sixteen minutes between the time the officer ascertained whether Johnson had anything to eat, drink, or smoke and the time the officer collected the breath sample, there is no foundation for the Intoxilyzer test.

[¶ 16] The officer testified he attempted to ascertain the twenty-minute waiting period after they arrived at the corrections center. The officer testified that five minutes before administering the S–D2 test, he checked Johnson's mouth. After the S–D2 test, Johnson was placed under arrest, his hands were cuffed behind his back, and he was placed in the back of the patrol car. Johnson was arrested at 1:32 a.m.; therefore, the officer checked Johnson's mouth at approximately 1:27 a.m. The Intoxilyzer test was conducted at 1:51 a.m. During those twenty-four minutes, Johnson's hands were cuffed behind his back, and he was transported in the back of the patrol car to the corrections center. After they arrived at the corrections center at approximately 1:35 a.m., the officer observed Johnson until the Intoxilyzer test was administered.

[¶ 17] Although the officer testified he did not ascertain until after arriving at the corrections center that Johnson had nothing to eat, drink, or smoke, the testimony is clear that Johnson's mouth was checked prior to his taking the S–D2 test. The testimony is also clear that Johnson had nothing to eat, drink, or smoke between the time of the S–D2 test and the administration of the Intoxilyzer test. Regardless of when the officer said he began to ascertain the time, the evidence supports the hearing officer's finding that the twenty-minute waiting period had been observed by the time the officer administered the Intoxilyzer test.

[¶ 18] Johnson argues there was no testimony provided to establish that he was continuously observed by the officer from the point of administration of the S–D2 test until the point of the Intoxilyzer test. Although there was no testimony that the officer constantly observed Johnson, observation is not the exclusive method of ascertaining whether the twenty-minute requirement has been met. *State v. Chihanski*, 540 N.W.2d 621, 624 (N.D. 1995). Furthermore, a fact-finder can draw reasonable inferences from the evidence. *Nelson v. Director, N.D. Department of Transportation*, 1997 ND 81, ¶ 11, 562 N.W.2d 562. It is not unreasonable for a fact-finder to infer that a person who had been handcuffed behind his back and had remained in police custody would have had nothing to eat, drink, or smoke during that time.

## IV

[¶ 19] Because the testimony at the hearing supports the hearing officer's finding that the twenty-minute waiting period had been observed before the officer administered the Intoxilyzer test, we reverse

the district court's decision and reinstate the hearing officer's decision to suspend Aaron Johnson's driving privileges for ninety-one days.

[¶ 20] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.