20230299
FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
04-19-2024
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 74

State of North Dakota,

Plaintiff and Appellee

v.

Michael Todd Fuglesten,

Defendant and Appellant

## No. 20230299

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable M. Jason McCarthy, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice.

Heather Misialek (argued), under the Rule on Limited Practice of Law by Law Students, and Andrew C. Eyre (appeared), Assistant State's Attorney, Grand Forks, N.D., for plaintiff and appellee.

Danny L. Herbel, Bismarck, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1] Michael Fuglesten appeals from an amended criminal judgment entered after he conditionally pled guilty to driving under the influence of intoxicating liquor, reserving the right to appeal the denial of his motion to suppress. He argues the warrantless entry into his garage was not justified by hot pursuit and other exigent circumstances. We reverse the criminal judgment and remand to allow Fuglesten to withdraw his guilty plea.

I

[¶2] In the early morning hours, a 911 caller reported a truck that "keeps driving by my house and slowing down" with "music blaring." An officer responded to the area. The parties agree the officer saw Fuglesten's vehicle in the area, learned Fuglesten's license was suspended, parked in front of Fuglesten's house, and observed the pickup drive into Fuglesten's garage. The officer did not attempt to conduct a traffic stop of Fuglesten's vehicle. The officer did not initiate his overhead lights at any time. The officer exited his vehicle and approached Fuglesten's garage on foot.

[¶3] Fuglesten's vehicle entered the left side of the garage. Fuglesten's garage is attached to his house. The door to the house is in the back right corner of the garage. The body camera video shows Fuglesten's pickup driving into the garage, with loud music playing, and Fuglesten exiting the vehicle. The officer approached the garage and shined his spotlight. The video shows, through the open garage door, Fuglesten exiting the front driver's side door of the vehicle and dropping his keys.

[¶4] From outside the garage, with his spotlight shining into the garage, the officer asked Fuglesten if he knew his license was suspended. Fuglesten responded, "I know that but I didn't drive." The officer said, "okay, come on over this way." Fuglesten responded, "no, I am in my house." The officer said, "no, you're not in your house, come on over this way." Fuglesten walked towards the door to the house. The officer entered the garage, saying "don't

walk away from me." The officer asked Fuglesten to "step out" and said "don't make the mistake of walking inside." While in the garage, following several requests for him to step out of the garage, Fuglesten either responded no, asked if he was being arrested, or stated, "I'm in my house." A second officer entered the garage and detained Fuglesten with handcuffs.

[¶5] Fuglesten was charged with driving under the influence of intoxicating liquor. Fuglesten filed a motion to suppress, arguing law enforcement unlawfully entered his residence. The State opposed the motion. The parties stipulated to the admissibility of the recording for the 911 call and the arresting officer's body camera video and that the exhibits "shall be received in lieu of testimony from the officer." The district court received the exhibits by order. An evidentiary hearing was not held, and the officers did not testify.

[¶6] On the basis of the evidence stipulated, the district court denied the motion to suppress evidence. Fuglesten conditionally pled guilty to driving under the influence of intoxicating liquor, reserving the right to appeal the denial of his motion to suppress evidence. An amended criminal judgment was entered. Fuglesten appeals.

II

[¶7] Fuglesten argues law enforcement illegally entered and searched his home and seized him in violation of the Fourth Amendment. He argues a hot pursuit did not occur and other exigent circumstances did not exist that would authorize a warrantless entry into his garage.

[¶8] "In reviewing the district court's decision on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance." *State v. Krall*, 2023 ND 8, ¶ 11, 984 N.W.2d 669. This Court "will affirm the decision on a motion to suppress on appeal if there is sufficient competent evidence fairly capable of supporting the court's findings, and the decision is not contrary to the manifest weight of the evidence." *Id.* (cleaned up). "Whether law enforcement violated constitutional prohibitions against unreasonable search and seizure is a question of law." *State v. Schmidt*, 2016 ND 187, ¶ 8, 885 N.W.2d 65.

[¶9] "The Fourth Amendment of the United States Constitution and Art. I, § 8, of the North Dakota Constitution protect individuals against unreasonable searches and seizures." *State v. Steele*, 2023 ND 220, ¶ 7, 997 N.W.2d 865 (quoting *State v. Bell*, 2017 ND 157, ¶ 8, 896 N.W.2d 913). "When an individual reasonably expects privacy in an area, the government, under the Fourth Amendment, must obtain a search warrant unless the intrusion falls within a recognized exception to the warrant requirement." *Krall*, 2023 ND 8, ¶ 12 (quoting *State v. Gregg*, 2000 ND 154, ¶ 23, 615 N.W.2d 515). "This Court has recognized that an individual may have a reasonable expectation of privacy in the individual's garage." *City of Bismarck v. Brekhus*, 2018 ND 84, ¶ 12, 908 N.W.2d 715; *see also State v. Kitchen*, 1997 ND 241, ¶ 17, 572 N.W.2d 106 ("We have long recognized that a closed garage may be an intimate part of the residence where an owner had a reasonable expectation of privacy."); *State v. Winkler*, 552 N.W.2d 347, 352 (N.D. 1996) ("Winkler had a reasonable expectation of privacy as to what could not be seen from outside his unattached garage, and the officers' entry into the garage constituted a search, thus requiring a warrant."). In *Lubenow v. N.D. State Hwy. Comm'r*, 438 N.W.2d 528, 531-32 (N.D. 1989), we explained Lubenow had no expectation of privacy regarding his activities in an open garage, but Lubenow had a reasonable expectation of privacy regarding the officer's intrusion into his garage.

[¶10] "Evidence discovered during a warrantless search when no exception exists must be suppressed under the exclusionary rule." *State v. Williams*, 2015 ND 103, ¶ 7, 862 N.W.2d 831 (quoting *State v. Kuruc*, 2014 ND 95, ¶ 12, 846 N.W.2d 314). "In a motion to suppress, a person alleging a Fourth Amendment violation has an initial burden of establishing a prima facie case of an illegal search or seizure." *Steele*, 2023 ND 220, ¶ 8 (cleaned up). "However, after the defendant has made a prima facie case, the burden of persuasion is shifted to the State to justify its actions." *Id.* (citations omitted).

## III

[¶11] Fuglesten argues exigent circumstances were required for officers to enter his garage without a warrant. He also argues *Lange v. California*, 594

3

U.S. \_\_\_, 141 S. Ct. 2011, 210 L. Ed. 2d 486 (2021), abrogates this Court's holding in *City of Bismarck v. Brekhus*, 2018 ND 84, 908 N.W.2d 715.

[¶12] The issue in *Brekhus* was whether the "underlying offense" of "fleeing" was minor or a jailable misdemeanor. In *Brekhus*, this Court considered the two factors outlined in *United States v. Anderson*, 688 F.3d 339, 344 (8th Cir. 2012), to determine whether "hot pursuit" creates an exigency, namely (1) gravity of the underlying offense and (2) an immediate or continuous pursuit of the suspect from the scene of the crime. 2018 ND 84, ¶ 16. This Court concluded fleeing under N.D.C.C. § 39-10-71, "which is not a minor, nonjailable offense," satisfied the gravity of the offense prong of exigency and further found "[t]he officer's pursuit of her vehicle—first in the patrol car and then continuing on foot into the open garage—was immediate and continuous." *Id.* at ¶ 27. The Court concluded "the officer's entry through the open garage door was limited to removing Brekhus from her vehicle and the garage to complete the traffic stop and determine why she had failed to stop[,]" and held "*[u]nder these specific circumstances*," "the police officer's warrantless, limited entry into Brekhus's open garage while in hot pursuit was reasonable." *Id.* (emphasis added). *Brekhus* considered the circumstances but did not specifically examine whether those circumstances were "exigent."

[¶13] Since our holding in *Brekhus*, 2018 ND 84, the United States Supreme Court decided *Lange v. California*, 594 U.S. \_\_\_, 141 S. Ct. 2011 (2021), which abrogates the categorical approach to the fleeing misdemeanor rule. Under the categorical approach to the fleeing misdemeanor rule, the pursuit of a fleeing misdemeanant was categorically an exigent circumstance, excusing compliance with the Fourth Amendment warrant requirement. Dispensing with this approach, *Lange* requires a specific finding of exigency. The United States Supreme Court explains:

> Our Fourth Amendment precedents thus point toward assessing case by case the exigencies arising from misdemeanants' flight. That approach will in many, if not most, cases allow a warrantless home entry. When the totality of circumstances shows an emergency—such as imminent harm to others, a threat to the officer himself, destruction of evidence, or escape from the home—

4

the police may act without waiting. And those circumstances, as described just above, include the flight itself. But the need to pursue a misdemeanant does not trigger a categorical rule allowing home entry, even absent a law enforcement emergency. When the nature of the crime, the nature of the flight, and surrounding facts present no such exigency, officers must respect the sanctity of the home—which means that they must get a warrant.

*Lange*, 141 S. Ct. at 2021-22.

[¶14] The *Lange* Court acknowledged, "[w]e have no doubt that in a great many cases flight creates a need for police to act swiftly. A suspect may flee, for example, because he is intent on discarding evidence. Or his flight may show a willingness to flee yet again, while the police await a warrant." *Id.* at 2021. However, "no evidence suggests that every case of misdemeanor flight poses such dangers." *Id.* "In misdemeanor cases, flight does not always supply the exigency that this Court has demanded for a warrantless home entry." *Id.* In some cases, "[t]hose suspected of minor offenses may flee for innocuous reasons and in non-threatening ways." *Id.*

[¶15] The *Lange* Court concluded:

> The flight of a suspected misdemeanant does not always justify a warrantless entry into a home. An officer must consider all the circumstances in a pursuit case to determine whether there is a law enforcement emergency. On many occasions, the officer will have good reason to enter—to prevent imminent harms of violence, destruction of evidence, or escape from the home. But when the officer has time to get a warrant, he must do so—even though the misdemeanant fled.

*Id.* at 2024. Therefore, exigent circumstances were required for law enforcement to enter Fuglesten's garage without a warrant.

# IV

[¶16] Assuming, without deciding, hot pursuit occurred here, under *Lange* we must examine whether exigent circumstances existed allowing law enforcement to enter Fuglesten's garage.

[¶17] The State argues exigent circumstances exist. "The government has the burden to demonstrate exigent circumstances to overcome the presumption a warrantless search is unreasonable." *State v. DeCoteau*, 1999 ND 77, ¶ 15, 592 N.W.2d 579. "A de novo standard of review is applied to the ultimate determination of whether the facts constitute exigent circumstances." *Id.*

[¶18] The parties agree, and the district court found, law enforcement had probable cause to believe Fuglesten committed the offense of driving under suspension. The State argues the exigent circumstances of destruction or dissipation of evidence existed in relation to the driving under the influence of intoxicating liquor. The district court specifically found evidence of exigent circumstances was not presented to the court regarding dissipation or destruction of evidence:

> [E]vidence was not presented to the Court relating to the mindset of [the officer] as he entered the garage. In fact, it is not clear if [the officer] even suspected that Fuglesten was impaired before entering the garage. Therefore, the evidence presented to the Court, or lack thereof, fails to sufficiently establish exigent circumstances relating to dissipation or destruction of evidence.

[¶19] The facts presented to the district court do not establish exigent circumstances relating to dissipation or destruction of evidence. Moreover, the record is void of any evidence Fuglesten presented an imminent harm of violence or escape from the home. Fuglesten's interaction with the officers was non-threatening. The record does not show that law enforcement lacked time to secure a warrant.

[¶20] The facts presented to the district court do not establish exigent circumstances. The officer could have obtained a warrant. Under these

circumstances, law enforcement's entry into Fuglesten's garage, without exigent circumstances, constituted an illegal entry.

V

[¶21] We reverse the criminal judgment and remand to allow Fuglesten to withdraw his guilty plea.

[¶22] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr